**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

KG DONGBU STEEL CO. LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant.

.

No. 26-cv-03529

**COMPLAINT**

1. Plaintiff KG Dongbu Steel Co. Ltd., ("Plaintiff" or "KG Dongbu") by and through its counsel hereby alleges and states as follows:

**NATURE OF THIS ACTION**

2. This action challenges certain aspects of the final results of the administrative review of the countervailing duty ("countervailing duty" or "CVD") order on certain corrosion-resistant steel products ("CORE") from the Republic of Korea issued by the U.S. Department of Commerce (the "Department" or "Commerce") for the January 1, 2023 to December 31, 2023 period of review ("period of review" or "POR"). *See Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 42,930 (Dep't Commerce July 13, 2026) ("*Final Results*"); Memorandum from Erin Begnal, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations to Christian L. Bush, Deputy Assistant Secretary for Policy and Negotiations, "Issues and Decision Memorandum" (July 6, 2026) (ACCESS Barcode: 4933418) ("Final Decision Memo").

## JURISDICTION

3. Plaintiff brings this action pursuant to subsections (a)(2)(A)(i)(I) and (a)(2)(B)(iii) of section 516A of the Tariff Act of 1930 as amended ("Tariff Act") to contest certain aspects of the *Final Results*. *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) (2020).

4. This Court has jurisdiction over this matter pursuant to section 201 of the Customs Courts Act of 1980 as amended ("Customs Court Act") because this action is commenced pursuant to section 516A of the Tariff Act. 28 U.S.C. § 1581(c) (2020).

## PARTIES AND STANDING

5. Plaintiff is a manufacturer and exporter of CORE from Korea to the United States, and therefore is an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Tariff Act. *See* 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3).

6. Plaintiff was a party to the administrative proceeding that led to the determination that is being challenged herein. Plaintiff was selected by Commerce as a mandatory respondent, responded to all of Commerce's questionnaires during the course of the proceeding, and submitted case brief and rebuttal briefs to Commerce. Accordingly, Plaintiff has standing to commence this action pursuant to section 301 of the Customs Courts Act. 28 U.S.C. § 2631(c).

## TIMELINESS OF THE ACTION

7. Commerce published the *Final Results* in the *Federal Register* on July 13, 2026. 91 Fed. Reg. at 42,930.

8. On August 7, 2026, Plaintiff timely filed a summons within thirty days of the *Final Results* publication.

9. This complaint is filed within thirty days of the summons in accordance with section 516A(a)(2)(A) of the Tariff Act, 19 U.S.C. § 1516a(a)(2)(A), section 301 of the Customs

Court Act, 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade.

**GENERAL ALLEGATIONS**

10. Commerce initiated the instant administrative review of the CVD order on CORE from Korea for the 2023 POR on August 14, 2024. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 66,035 (Dep't Commerce Aug. 14, 2024).

11. Commerce selected KG Dongbu as a mandatory respondent in this administrative review on September 23, 2024, and issued the Initial Questionnaire the following day. *See* Memorandum from Racel Accorsi and Shane Subler, Int't Trade Compliance Analysts, to Kathleen Marksberry, Director of Antidumping and Countervailing Duty Operations Office VIII, "Respondent Selection" (Sept. 23, 2024 (ACCESS Barcode: 4635587); Letter from Shane Subler, Int't Trade Compliance Analyst to Seokjoon Woo, Embassy of the Republic of Korea, "Countervailing Duty Questionnaire" (Sept. 24, 2024) (ACCESS Barcode: 4636241) ("Initial Questionnaire").

12. KG Dongbu filed its Initial Questionnaire Response on November 21, 2024. *See* Letter from Morris, Manning & Martin, LLP, "KG Dongbu's Initial Questionnaire Response" (Nov 21, 2024) (ACCESS Barcode: 4668327) ("KG Dongbu's IQR").

13. The Government of Korea ("GOK") filed its response to the Initial Questionnaire on November 29, 2024. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Response to the Initial Questionnaire" (Nov. 29, 2024) (ACCESS Barcode: 4672040) ("GOK IQR").

14. In its initial questionnaire response, KG Dongbu explained that, in 2015, 2016, and 2018, the creditors committee of Dongbu Steel Co. Ltd. ("Dongbu") approved debt-to-equity

conversions ("D/E swaps") by both government-controlled and private commercial banks as part of Dongbu's corporate workout program. *See* KG Dongbu's IQR at 28-34.

15. KG Dongbu also explained that in 2019 Dongbu was acquired by the KG Consortium. KG Dongbu's IQR at 17-61, Exhibit B-17 to Exhibit B-42. In 2019, Dongbu published public notice announcing a bidding process that sought acquisition by a third party of newly issued common stock that would result in the transfer of corporate management rights. KG Dongbu's IQR at 35-36. Potential investors that submitted a confidentiality agreement received private and confidential information of Dongbu to assist them in determining whether to participate in the bidding process. Among the potential investors that received the bidding materials, three submitted preliminary bids, including the KG Consortium. These bids were reviewed by the financial advisors and all qualified for the final bidding process, but only the KG Consortium submitted a final bid. *Id.* at 36-38. Following counteroffers and negotiations between the financial advisors and the KG Consortium, the final investment amount bid by the KG Consortium was accepted. *Id.* at 36-37. In separate agreements, the creditors committee agreed to a fourth D/E swap and another restructuring of Dongbu's outstanding long-term loans and bonds. *Id.* at 38-39. Finally, the creditors committee, Dongbu's board of directors, and its general shareholders meeting each approved the entire package. In its initial questionnaire response, KG Dongbu provided a detailed explanation of this process and supporting exhibits detailing the initial decision to proceed with an M&A transaction through to final approval of the transaction by the Dongbu general shareholders meeting, including a change in ownership appendix. KG Dongbu's IQR at 5-13, 34-40, Exhibit B-35.

16. In addition to the D/E swap issue, another program being reviewed by Commerce was the alleged provision of electricity for less than adequate remuneration ("LTAR"). *See* GOK

IQR at 20-63, Appendix-12 (p. 253-64). Although Commerce's analysis is complex and focuses upon whether the Korea Electric Power Corporation's ("KEPCO") electricity prices are "consistent with market principles," the primary focus of the analysis is whether KEPCO fully recovers its cost and profit. *See, e.g.*, Final Dec. Memo at Comment 6. Commerce thus required the GOK to submit KEPCO's cost data as part of its questionnaire response. In its initial questionnaire response, the GOK provided the KEPCO data for calendar year 2023. *See* GOK IQR at Exhibit E-23 and Exhibit E-23.1

17. In its initial questionnaire and a supplemental questionnaire responses, the GOK provided confidential electricity usage data by consumers of electricity during the 2023 POR. GOK IQR at 42-43; Letter from Yoon and Yang LLC to Sec'y Commerce, "Response to the Supplemental Questionnaire," at 2-4, Exhibit E-24 (July 10, 2025) (ACCESS Barcode: 4790687) ("GOK SQR"). This data was requested by Commerce for purposes of its *de facto* specificity analysis.

18. In its initial questionnaire response, the GOK also explained that KEPCO introduced a fuel cost adjusted charge ("FCAC") and the cost pass-through tariff system in January 2021 to better account for fluctuations in fuel prices. *See* GOK IQR at 22-24, Appendix-12 (p. 253), Exhibit E-2 at 5-6. The FCAC reflects changes in fuel costs every quarter in the price that KEPCO charges to its customers. If KEPCO is unable to charge the entire fluctuation in fuel prices to its customers in a given quarter due to certain built-in limits on the amount prices can be increased each quarter, the cost pass-through system allows KEPCO to "accumulate such portions and reflect them in what is called the total comprehensive cost." *Id.* The total comprehensive cost is then used to calculate the cost recovery rate going forward and to establish the base charge and

usage charge of KEPCO's electricity tariff in order to permit recovery of these increased fuel costs in later quarters. *Id*.

19. The GOK explained that KEPCO accumulated portions of the fuel costs that were not charged to its customers through the FCAC in 2021 or 2022 and included these costs as an item in its total operating cost during the 2023 POR. The total operating cost (including the accumulated fuel costs carried forward from 2021 and 2022) was then allocated to the costs of each class of electricity to form the basis for calculating the cost recovery rate of each class. These accumulated costs were included in KEPCO's 2023 cost data to ensure the long-term recovery of fuel costs that had not been fully passed on to its customers in prior years. *See* GOK IQR at Exhibit E-23. These unrecovered fuel costs, however, were already included in KEPCO's 2021 and 2022 costs. *See* GOK IQR at 23-24. Accordingly, the GOK had submitted in its initial questionnaire response, an alternative cost dataset that excluded the 2021 and 2022 costs that were carried forward. GOK IQR at 24, Exhibit E-23.1.

20. On January 8, 2025, Commerce issued its *Preliminary Results*. *Certain Corrosion-Resistant Steel Products From the Republic of Korea: Preliminary Results and Rescission, In Part, of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 689 (Dep't Commerce 2026) ("*Preliminary Results*") and accompanying preliminary decision memorandum ("Preliminary Decision Memo").

21. In the *Preliminary Results*, Commerce determined that the provision of electricity provided a financial contribution and benefit. Preliminary Decision Memo at 28-36. Commerce also preliminarily determined that the provision of electricity was *de facto* specific pursuant to section 771(5A)(D)(iii) because the steel industry allegedly "received a disproportionately large amount of the subsidy." *Id.* at 35 (citing 19 U.S.C. § 1677(5A)(D)(iii)(III)).

22. Commerce also analyzed the three D/E swaps that Dongbu conducted in 2015, 2016 and 2018. Commerce preliminarily determined that those three D/E swaps did not confer a benefit to Dongbu based on its decisions in prior administrative reviews, and that no benefit from those equity infusions passed through from Dongbu to KG Dongbu as a result of the acquisition of Dongbu by the KG Consortium. *See* Preliminary Decision Memo at 12-16.

23. Interested parties filed case briefs on April 24, 2026. *See* Letter from Taft, Stettinius & Hollister LLP to Sec'y Commerce, "Case Brief of KG Dongbu Steel Co., Ltd." (Apr. 24, 2026) (ACCESS Barcode: 4915906) ("KG Dongbu's Case Brief"); Letter from Yoon and Yang LLC to Sec'y Commerce, "Case Brief of the Government of the Republic of Korea' (Apr. 24, 2026) (ACCESS Barcode: 4915846) ("GOK's Case Brief"); Letter from Wiley Rein LLP to Sec'y Commerce "Case Brief" (Apr. 24, 2026) (ACCESS Barcode: 4916060) ("Petitioner's Case Brief").

24. In their case briefs, KG Dongbu and the GOK argued that Commerce's determination that the provision of electricity program was *de facto* specific was unlawful. *See* KG Dongbu's Case Brief at 19-29; GOK's Case Brief at 17-28. KG Dongbu and the GOK also argued that Commerce's benefit determination was unlawful because it included the fuel-cost pass-through amounts that were incurred in 2021 and 2022 as part of its costs for the 2023 POR. KG Dongbu's Case Br. at 29-31; GOK Case Br. at 11-17. These costs should only have been included in 2021 or 2022 when they were incurred, and thus excluded from the 2023 costs to avoid double counting.

25. In its case brief, the Petitioner, Nucor Corporation, argued that Commerce should determine that the D/E swaps in 2015, 2016, and 2018 conferred a benefit upon Dongbu and that those benefits passed through from Dongbu to KG Dongbu despite the acquisition of Dongbu by the KG Consortium. Petitioner's Case Br. at 3-10.

26. KG Dongbu filed a rebuttal brief in response to Petitioner's arguments on May 4, 2026. Letter from Taft, Stettinius & Hollister LLP to Sec'y Commerce, "KG Dongbu's Rebuttal Brief" (May 4, 2026) (ACCESS Barcode: 4918032). KG Dongbu argued in particular that Commerce's preliminary determination that no benefit from the three D/E swaps passed from Dongbu to KG Dongbu was supported by substantial evidence and in accordance with law. *Id.* at 10-14.

27. Commerce published its *Final Results* on July 13, 2026. *See generally Final Results*.

28. In the *Final Results*, Commerce continued to determine that the provision of electricity in Korea was *de facto* specific pursuant to section 771(5A)(D)(iii)(III) of the Act. Despite the arguments raised by KG Dongbu and the GOK, Commerce continued to determine that the steel industry received a disproportionately large amount of the subsidy. *See* Final Decision Memo at Comment 8.

29. Commerce also rejected the argument that the accumulated fuel costs incurred in 2021 or 2022 should have been excluded from the 2023 cost data that Commerce used for its cost recovery test. *See* Final Decision Memo at Comment 7.

30. As to the D/E swaps, Commerce reversed its preliminary determination and found that Dongbu received a benefit from the 2015, 2016 and 2018 D/E swaps. Final Decision Memo at Comment 1. Commerce also determined that the D/E swaps passed from Dongbu to KG Dongbu despite the acquisition of Dongbu by the KG Consortium in an arm's length transaction. *Id.*

31. In calculating the purported benefits that passed from Dongbu to KG Dongbu for each of the D/E swaps, Commerce misapplied the formula used to calculate the benefit. Memorandum from Shane Subler, Senior Int'l Trade Compliance Analyst to The File, "Final

Results Calculation Memorandum for KG Dongbu Steel Co." at Attachment II (July 6, 2026) (ACCESS Barcode: 4934291) ("Final Calculation Memo"). Since the average useful life ("AUL") period is 15 years, Commerce allocated the amounts of the 2015, 2016, and 2018 government equity infusions using an AUL of 15 years for each D/E swap pursuant to 19 C.F.R. § 351.507(c) and 19 C.F.R. § 351.524(b) and (d). But, in determining the amount of the benefit in each year of the 15-year allocation period, Commerce incorrectly calculated the discount rates for purposes of 19 C.F.R. § 351.524(d) based on a 3-year period rather than the 15 year useful life it should have used. Final Calculation Memo at Attachment 2 (Tab "ATT 2 BPI Debt Rest Equity").

32. Calculation of the discount rate for each year of the 15-year AUL period using a 3-year discount rate rather than one based on the actual 15-year period at issue is unsupported by substantial evidence and contrary to law.

33. This action followed.

**STATEMENT OF CLAIMS**

34. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

35. Commerce's *Final Results* is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

**Count One**

36. Plaintiff incorporates by reference all statements and allegations in the preceding paragraphs as if fully set forth herein.

37. Commerce's determination that the provision of electricity for LTAR was *de facto* specific under section 771(5A)(D)(iii)(III) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

**Count Two**

38. Plaintiff incorporates by reference all statements and allegations in the preceding paragraphs as if fully set forth herein.

39. Commerce's calculation of the benefit from the provision of electricity for LTAR program under section 771(5)(E) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

**Count Three**

40. Plaintiff incorporates by reference all statements and allegations in the preceding paragraphs as if fully set forth herein.

41. Commerce's determination that any alleged subsidies from the first three D/E swaps passed through from Dongbu to KG Dongbu despite the KG Consortium's acquisition in an arm's length transaction is unsupported by substantial evidence and otherwise not in accordance with law.

**Count Four**

42. Plaintiff incorporates by reference all statements and allegations in the preceding paragraphs as if fully set forth herein.

43. Commerce's calculation of the unequityworthy discount rate for purposes of measuring the benefits from the equity infusions from government-controlled creditors is unsupported by substantial evidence and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

44. Wherefore, Plaintiff respectfully requests that this Court hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law.

Plaintiff thus respectfully requests that this Court remand the *Final Results* to Commerce to correct the errors set forth in this Complaint and grant such other relief that this Court deems appropriate.

Respectfully submitted,

/s/ Brady W. Mills

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

TAFT STETTINIUS & HOLLISTER LLP
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
Email: bmills@taftlaw.com
Telephone: 202.216.4116

*Counsel to Plaintiff*

September 8, 2026

## CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

***KG Dongbu Steel Co., Ltd. v. United States***
**U.S. Court of International Trade**
**Court No. 26-03529**

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I, Brady W. Mills, hereby certify that on September 8, 2026, I served the following individuals and notified all interested parties who were a party to the proceeding below, by mailing a copy of the foregoing Complaint by first class mail, return receipt requested, unless otherwise indicated:

**On Behalf of The United States**
Attorney-in-Charge
**U.S. Department of Justice**
International Trade Field Office
National Courts Branch
Room 346
26 Federal Plaza
New York, NY 102786

**On Behalf of The United States**
Jeanne Davidson, Esq.
Director, Civil Division
**U.S. Department of Justice**
Commercial Litigation Branch
1100 L Street, NW, Room 12124
Washington, D.C. 20530

**On Behalf of The United States Department of Commerce**
General Counsel
**U.S. Department of Commerce**
Mail Stop 5875 HCHB
14th Street & Constitution Avenue, NW
Washington, D.C.20230

**On Behalf of The United States Department of Commerce**
Chief Counsel
**U.S. Department of Commerce**
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
1401 Constitution Ave., NW
Washington, DC 20230

**On Behalf of Steel Dynamics, Inc.**
Jeffrey Gerrish, Esq.
**Schagrin Associates**
900 7th Street, NW
Suite 500
Washington, DC 20001

**On Behalf of Dongkuk Coated Metal Co., Ltd.**
David E. Bond, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807

**On Behalf of United States Steel Corporation**
Thomas M. Beline, Esq.
**Cassidy Levy Kent (USA) LLP**
2112 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037

**On Behalf of SeAH Coated Metal ("SeaAH CM") and SeAH Steel Corporation ("SeAH Steel")**
Jeffrey M. Winton, Esq.
**Winton & Chapman PLLC**
1100 13th Street NW
Suite 825
Washington, DC 20005

**On Behalf of Nucor Corporation**
Alan H. Price, Esq.
**Wiley Rein LLP**
2050 M Street NW
Washington DC 20036

**On Behalf of the Government of Korea**
Dongwon Jung
**Yoon & Yang LLC**
(06164) Floors 6, 17, 18, 19, 22, 23, 27 & 34,
ASEM Tower,
517 Yeongdong-daero, Gangnam-gu,
Seoul, South Korea

**On Behalf of the Embassy of the Republic of Korea**
TAE SUNG KWON
**Embassy of the Republic of Korea**
2450 Massachusetts Avenue, NW
Washington, DC 20008

/s/ Brady W. Mills